UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
EUNICE CHANCE CLARKE,

                        Plaintiff,

                        **MEMORANDUM & ORDER**

-against-

                        06 CV 3162 (RJD) (MDG)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
------------------------------------------------------------X
DEARIE, Chief Judge.

Pursuant to 42 U.S.C. § 405(g), plaintiff Eunice Clarke seeks to reverse the decision of defendant Commissioner that she is not entitled to Social Security disability ("SSD") benefits. Both plaintiff and defendant move for judgment on the pleadings. For the reasons set forth below, the Commissioner's decision is remanded for further proceedings consistent with this opinion.

## BACKGROUND

**A.**     **Factual and Procedural History**

Plaintiff was born on September 15, 1959 and resides in Brooklyn, New York. Tr. 32, 34. She holds a GED and has completed training as a nurse's aide. Tr. 56. From 1979 until July 2003, plaintiff worked as a patient care technician. Tr. 53. Her duties included bathing, dressing, and grooming patients; transferring patients from beds to wheelchairs; and making beds. Tr. 74. In June, 2002, plaintiff was involved in a motor vehicle accident. Tr. 116. She began having back pain in April 2003. Tr. 47.

On November 25, 2003, plaintiff applied for disability benefits, claiming a period of

disability beginning July 7, 2003, the date on which she stopped working. Tr. 47. The claim was denied on May 13, 2004, Tr. 24, and plaintiff requested a hearing, Tr. 28. On October 24, 2005, Administrative Law Judge ("ALJ") Michael Friedman conducted a hearing to evaluate plaintiff's claim, Tr. 153, which plaintiff attended with counsel, Tr. 155. In a ruling dated November 9, 2005, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act because she retained the residual functional capacity ("RFC") for light work. Tr. 17.

Plaintiff requested a review of the ALJ's decision, which the Appeals Council rejected on May 12, 2006, thereby making the ALJ's ruling the final decision of the Commissioner. Tr. 4. Plaintiff commenced this action on June 27, 2006.

## B. Medical Evidence

### 1. Treating Physician Dr. Mayya Fasolya

Dr. Mayya Fasolya first examined plaintiff on April 24, 2003. Tr. 115. Plaintiff remained under Dr. Fasolya's care through the date of the administrative hearing. Tr. 160. Dr. Fasolya holds both M.D. and D.O. (Doctor of Osteopathy) degrees. Tr. 119.

In a letter dated April 29, 2003, Dr. Fasolya reported that plaintiff had lower back pain secondary to bulging discs at L3-L4 through L5-S1, with osteoarthritic facet disease with central and bilateral neural canal stenosis. Tr. 109. Dr. Fasolya also reported that plaintiff was receiving physical therapy twice per week and used Vicoprofen and a Lido-Derm patch to relieve her back pain. Id.

A CT scan of plaintiff's back performed on August 9, 2002, before her first visit with Dr.

Fasolya, showed "[b]ulging discs at L3-L4 through L5-S1 with osteoarthritic facet disease with central and bilateral neural canal stenosis." Tr. 122. On June 4, 2003, plaintiff underwent a second CT scan. This scan showed "focal central herniation of L5-S1," as well as a "disc bulge at L4-5 resulting in ventral extradural defects." Tr. 124.

Dr. Fasolya examined plaintiff again on July 1, 2003; plaintiff complained of lower back pain radiating into her left hip and leg and was having difficulty walking. Tr. 89. Dr. Fasolya noted that plaintiff had a history of disc bulging at L3-L4, a herniated disc at L5-S1, decreased range of motion in her left hip, and increased tenderness and pain in her back. Id. Dr. Fasolya recommended physical therapy and medication to address plaintiff's back pain, as well as diet and exercise to address her obesity. Id. At a follow-up exam on July 15, 2003, plaintiff complained of similar symptoms. Tr. 90. Dr. Fasolya again recommended physical therapy and medication, and prescribed Phentermine for obesity. Id. In a letter dated July 3, 2003, Dr. Fasolya reported that plaintiff suffered "severe pain" in her back and needed "continue[d] treatment and physical therapy." She opined that plaintiff was unable to work for eight weeks and could return to work on August 25, 2003. Tr. 108.

Plaintiff returned to Dr. Fasolya again on July 25, 2003, complaining of lower back pain "off and on." Tr. 91. Dr. Fasolya noted decreased range of motion in both of plaintiff's hips, and increased pain and tenderness in her back at L2-L3, L3-L4, and L4-L5. Id. Again, she recommended physical therapy and medication for the back pain, and diet and exercise for obesity. Id.

At an August 12, 2003 exam, Dr. Fasolya again noted decreased range of motion in plaintiff's hips with pain on flexion and abduction, as well as increased tenderness and pain at

3

L2-L3, L3-L4, and L4-L5. Tr. 92. A right leg raising test was positive. Id. Dr. Fasolya recommended continuation of physical therapy and again prescribed a Lido-Derm patch. Id. On the same date, Dr. Fasolya completed a questionnaire regarding plaintiff's condition for the Service Employees International Union ("SEIU") Benefit and Pension Funds. Tr. 105-06. Dr. Fasolya reported disc bulging at L3-L4 and L4-L5, as well as disc herniation at L5-S1. Tr. 105. She noted that plaintiff had tenderness and pain in her back at L2-L3, L3-L4, and L4-L5; that a right leg raising test was positive; that plaintiff had decreased range of motion in both hips with pain on flexion and abduction; and that plaintiff suffered pain while walking. Tr. 106. She opined that plaintiff was unable to work until October 1, 2003. Id.

On September 16, 2003, plaintiff returned to Dr. Fasolya, complaining of "continuous back pain" radiating into her hips "off and on." Tr. 93. Dr. Fasolya found decreased range of motion in plaintiff's hips as well as pain and tenderness in her back. Id. A November 6, 2003 examination revealed decreased range of motion in plaintiff's hips and knees in addition to back pain. Tr. 94. On November 24, 2003, Dr. Fasolya again noted decreased range of motion and pain in plaintiff's left hip and knee, as well as pain in plaintiff's back. Tr. 95. She recommended physical therapy to address these problems and prescribed Ultracet. Id. She noted that plaintiff's hypertension was stable, recommended diet and exercise to address obesity and high cholesterol, and prescribed ferrous sulfate for anemia. Id.

On December 5, 2003, Dr. Fasolya examined plaintiff again.[1] Tr. 96. Plaintiff

---

[1] Dr. Fasolya's exam notes are dated "12/5/06," but, given the chronology of plaintiff's relationship with Dr. Fasolya and the dates of the accompanying documents, the Court assumes these notes are in fact from 2003. Defendant's statement of the medical evidence also places this examination in 2003. See Def.'s Mem. Supp. Mot. J. Pleadings 4.

4

complained of pain in both shoulders, low back pain, difficulty walking and standing, and pain radiating in her hips "off and on." Id. Dr. Fasolya noted decreased range of motion in plaintiff's shoulders and both hips, as well as tenderness and pain in her back. The doctor reported these findings in a second workers' compensation questionnaire and letter dated December 5, 2003, estimating that plaintiff could return to work on March 5, 2004. Tr. 102-04.

On January 8, 2004, Dr. Fasolya examined plaintiff and completed a questionnaire for the New York State Office of Temporary and Disability Assistance. Tr. 115. She reported a diagnosis of "chronic low back pain secondary to disc bulging L3-L4, L4-L5, focal central herniation L5-S1," anemia, obesity, and high cholesterol. Id. She reported that plaintiff took Vicoprofen, Oscal, ferrous sulfate, and Lipitor; used a Lido-Derm patch and lumbo-sacral support; and underwent physical therapy. Tr. 116. Under "Clinical Findings," Dr. Fasolya noted that plaintiff's right leg raising test was positive. Id. She also noted that plaintiff was using a cane and lumbo-sacral support. Tr. 117. Finally, Dr. Fasolya opined that plaintiff's ability to lift and carry was limited to two to four pounds up to two-thirds of the work day, that she could stand and/or walk up to two hours per day, and could sit less than six hours per day. Tr. 117-18.

A magnetic resonance imaging ("MRI") scan performed on May 17, 2005, showed that plaintiff suffered from a "herniated nucleus pulposus in contact with the thecal sac and facet joint hypertrophy encroaching upon the left and right lateral neural foraminal at L5-S1." Tr. 148.

On July 25, 2005, Dr. Fasolya examined plaintiff again. Tr. 147. Plaintiff exhibited decreased range of motion in her hips and knees, increased tenderness and pain in her back, swelling in her ankles, and pitting edema. Id. Dr. Fasolya reported these findings in a letter, opining that plaintiff should "continue treatment, including pain management, physical therapy

5

for 4 months." Tr. 147. She estimated that plaintiff could return to work on December 1, 2005. Id.

Dr. Fasolya completed a Physical Residual Functional Capacity Questionnaire on September 8, 2005. Tr. 143-46. She reported a diagnosis of "low back pain secondary to disc bulging at L3-L4, L4-L5, disc herniation at L5-S1," hypertension, anemia, and high cholesterol. Tr. 143. She noted that plaintiff's prognosis was "fair." Id. Under a heading requesting "clinical findings and objective signs," Dr. Fasolya reported increased pain and tenderness in plaintiff's back, decreased range of motion in both hips and knees, pain on flexion and extension, ankle swelling, and edema. Id. She reported that plaintiff's treatment included a Lido-Derm patch, Ultracet, Motrin, Lipitor, a lumbo-sacral support, and physical therapy. Id. Dr. Fasolya opined that plaintiff could neither sit nor stand for more than twenty minutes without a break; that she could sit, stand, or walk for less than two hours per day; that she could never perform any lifting; that she suffered from depression and anxiety; and that she was incapable of performing even "low stress" jobs. Tr. 144-45.

Dr. Fasolya examined plaintiff on November 21, 2005, reporting her findings in a letter. Tr. 149. Plaintiff again complained of back pain radiating into her hips and knee (the doctor's letter does not specify which knee) and difficulty walking and sitting. Id. Plaintiff's back pain was aggravated by bending forward. Id. The doctor found decreased tenderness and increased pain in plaintiff's lower back, decreased range of motion in both hips and knees, and pain on flexion and extension. Id. Dr. Fasolya estimated that plaintiff could return to work on April 1, 2006. Id.

## 2. Examining Physician Dr. Antonio De Leon

Dr. Antonio De Leon performed a consultative examination of plaintiff on February 12, 2004. Tr. 126-31. Plaintiff described her medical history for Dr. De Leon, who noted that her reliability was "adequate." Tr. 126. Plaintiff told Dr. De Leon that she had suffered from hypertension and back pain for two years. Id. She had received three epidural injections and underwent physical therapy three times per week. Id. She complained of "pain over the low back area, down to the left hip, down to the knee, present all the time," and had difficulty sitting, standing and walking. Id. Plaintiff reported using Ultracet four times per day and a Lido-Derm patch. Id. She also told Dr. De Leon that her husband did the shopping and cooking. Id.

Upon physical examination, Dr. De Leon noted that plaintiff was "moderately obese" and that she arrived at her appointment with a cane, but was able to walk without it. Id. Plaintiff walked with a "slight limp," and had "slight difficulty transferring from a seated position on and off the exam table." Id. Dr. De Leon noted that plaintiff's "spine/joints [had] full range of motion without deformities, swelling warmth or tenderness," and found no spasm or muscle atrophy. Tr. 127. Plaintiff's back showed sixty degrees flexion and extension. Id. Her knee showed swelling and 120 degrees flexion and extension. Id. She had "slight difficulty" doing a tandem walk and walking on the balls of her feet or on her heels. Id. An X-ray of plaintiff's lumbar spine showed a "transitional L5 vertebral body," and was otherwise an "unremarkable study." Tr. 127, 130. A knee X-ray was "negative." Id.

Dr. De Leon diagnosed plaintiff with "exogenous obesity," hypertension, and "back and knee pains with no objective evidence of joint limitations"; he reported that plaintiff's prognosis was "fair." Tr. 127. Dr. De Leon opined that plaintiff had no limitations on her ability to sit and

that her ability to walk, stand, and lift was "mildly limited" because of her hypertension and back pain. Id.

### 3. Non-Examining Physician Dr. Salomea Kape

On April 19, 2004, Dr. Salomea Kape, a medical consultant for the New York State Office of Temporary and Disability Assistance, completed a "Request for Medical Advice" form after reviewing plaintiff's medical records. Tr. 138. Dr. Kape noted that plaintiff's hypertension was "poorly controlled." Id. She noted that plaintiff's range of motion "in all joints" was "WNL" (within normal limits). Id. Plaintiff's spine X-ray was also within normal limits, although an MRI showed "discogenic disease of L3-L4 and L5-S1." Id. Dr. Kape also noted that while plaintiff's activities "seem[ed] to be limited," she was able to "do her shoping [sic] for 2 hours." Id. Based on this information, Dr. Kape decided that plaintiff's back pain was "real." Id. But because plaintiff could walk without a cane and showed no signs of muscle disuse, Dr. Kape opined that plaintiff could sit without limitation, stand or walk for four to six hours per day, lift ten pounds frequently, and lift twenty pounds occasionally. Id.

### 4. Medical Information Provided by Plaintiff

On December 12, 2003, plaintiff completed a "Function Report" in connection with her initial application for disability benefits. Tr. 73-83. The report describes her symptoms and daily activities. In it, plaintiff wrote that she had pain in her back and hip which limited her ability to walk, sit, stand, bend, and lift. Tr. 82. She described "shooting pain down [her] lower back, into [her] left hip [and] leg." Tr. 81. She also wrote that the pain had become more severe since its

onset and appeared to be worsening. Tr. 82. The pain was present "all the time" and lasted until she took medication, which "sometimes" provided "maybe a little comfort" for about two hours. Id.

However, plaintiff reported that she could still perform some activities. She prepared meals daily, Tr. 75, and could put wash into the machine, although her husband had to take it out, Tr. 76. Plaintiff also went grocery shopping for two hours every two weeks. Tr. 77. She attended church "whenever the pain [was] not so severe," and regularly talked on the phone. Tr. 78. She went outside daily, Tr. 76, sometimes taking short walks, Tr. 74.

### 5. Disability Analyst Posner

The record also includes a Physical Residual Functional Capacity Assessment, completed by Elin Posner on April 27, 2004. Tr. 132-137.[2] Posner opined that plaintiff could lift and/or carry up to twenty pounds occasionally and up to ten pounds frequently. Tr. 133. She also averred that plaintiff could sit, stand, and/or walk for about six hours in an eight-hour workday. Id. In support of these conclusions, she cited a number of Dr. De Leon's clinical findings, as well as "limited range of motion in the L-S spine and swelling, pain, and limited ROM [range of motion] of the knee." Id. Posner opined that plaintiff had occasional postural limitations and no manipulative, visual, communicative, or environmental limitations. Tr. 134-35. She also noted that her conclusions were "significantly different" from those of Dr. Fasolya. Tr 136. By way of

---

[2]The record does not establish that Posner is a doctor. The ALJ refers to Posner's report as the opinion of a physician in citing "the other physicians' opinion [sic] in Exhibits 4F and 5F." Tr. 16. However, this reference may be an inadvertent error, as the ALJ also refers to Posner as a "medical consultant." Tr. 15. Various documents in the record refer to Posner as a "Disability Examiner," Tr. 23, "Disability Analyst," Tr. 72, 86, and "Medical Consultant," Tr. 137.

9

explanation for this discrepancy, she referred to Dr. Kape's opinion that plaintiff could "stand/walk 4-6 hours—due to the fact claimant [could] walk w/o assistance—there is no restriction in ROM, and no atrophy . . . ." Tr. 136.

## C. The Administrative Hearing

### 1. Plaintiff's Testimony

At her October 24, 2005 hearing, plaintiff testified that she had pain in her lower back radiating into her hips and legs. Tr. 156. She used a cane and a back support. Tr. 156-57. She testified that medication alleviated the pain "[s]ometimes a little bit." Tr. 157. Changing positions helped "a lot." Id. Plaintiff estimated that she could stand for fifteen to twenty minutes at a time and could sit for fifteen minutes before changing positions. Tr. 158. She typically walked one-half block before resting. Id. She testified that she could not lift a bag weighing five to ten pounds, id., though she could perhaps lift one or two pounds. Tr. 158-59. Plaintiff told the ALJ that she no longer did any grocery shopping, cooking, or cleaning. Tr. 159. She also testified that a neurologist had suggested she consider back surgery, but that she had declined to undergo the procedure. Tr. 162.

### 2. The ALJ's Ruling

In evaluating plaintiff's claim for disability benefits, the ALJ applied the five-step process required by 20 C.F.R. § 404.1520(a)(4), and described below. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since July 7, 2003. Tr. 15. At step two, he found that plaintiff had several "severe impairments," specifically "back disorder, obesity,

10

anemia, hypertension, and high cholesterol." Id. However, at step three, the ALJ found that plaintiff's impairments did not meet or equal the criteria of any impairment listed in Appendix 1 of Subpart P of 20 C.F.R. § 404. Tr. 16. None of these findings is disputed.

At step four, the ALJ found that plaintiff had the residual functional capacity to sit, stand, and walk for up to six hours per day; and to lift, carry, push, or pull ten pounds frequently and twenty pounds occasionally. Tr. 15. In reaching this conclusion, he relied upon the opinions of Drs. De Leon and Kape, as well as the RFC assessment of Elin Posner. Tr. 15-16. The ALJ declined to grant "significant weight" to Dr. Fasolya's opinion, because he found that it was "not supported by any objective medical findings" and was "inconsistent with the other physicians' opinion [sic] in Exhibits 4F and 5F" (viz., the opinions of Posner and Dr. Kape). Tr. 16. Because plaintiff's residual functional capacity limited her to light work, the ALJ found that she was unable to perform her past relevant work. Id.

At step five, however, the ALJ concluded that plaintiff could find gainful employment other than her previous work, based on her residual functional capacity, age, education, and work experience.[3] Tr. 17. Consequently, he found that plaintiff was not disabled within the meaning of the Social Security Act, and denied her claim for benefits. Id.

Plaintiff challenges the ALJ's finding that she retained the residual functional capacity for light work. She argues that Dr. Fasolya's opinion compels the conclusion that she was unable to perform even sedentary work during the period in question, and that the ALJ erred in declining to

---

[3] The ALJ's decision includes a finding that "there are no jobs that exist in significant number in the national economy that the claimant can perform. . . ." Tr. 16. Because this finding is clearly inconsistent with the ALJ's ultimate conclusion, and because it is contradicted by subsequent discussion in the decision, the Court assumes that it is the result of a typographical error.

11

grant that opinion controlling weight. See Pl.'s Mem. Supp. Cross-Mot. J. Pleadings 7.

## DISCUSSION

### A. Legal Standards

#### 1. Standard of Review

A district court does not review the Commissioner's decision regarding a claimant's eligibility for disability benefits de novo. Beauvoir v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997). To the contrary, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Consequently, a district court may set aside an ALJ's decision in only two situations: "[(1)] if the factual findings are not supported by 'substantial evidence' or [(2)] if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

Nonetheless, a reviewing court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983)). If, upon a review of the whole record, the court finds that the Commissioner's decision is not supported by substantial evidence or is based upon legal error, the court is empowered to modify or reverse the decision, with or without remanding the case. 42 U.S.C. § 405(g).

### 2. Determination of Eligibility for Benefits

A claimant is "disabled" within the meaning of the Social Security Act, and thus eligible for benefits, only if "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). The Social Security Administration has established a five-step process for determining whether an applicant is disabled:

> In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a "severe impairment," (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) (alteration in original) (quoting Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002)); see also 20 C.F.R. § 404.1520(a)(4). Thus, plaintiff's eligibility for benefits depends on step five—whether her residual functional capacity prevents her from performing other work.

### 3. Treating Physician Rule

Social Security Administration regulations require an ALJ to consider every medical opinion in a claimant's record. 20 C.F.R. § 404.1527(d). But the regulations also incorporate a rule of deference toward the opinion of a claimant's "treating source." 20 C.F.R. § 404.1527(d)(2). See Green-Younger, 335 F.3d at 106; Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993). A "treating source" is defined as "your own physician, psychologist, or other

acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1502.

In evaluating a claim for disability benefits, the Commissioner generally ascribes more weight to the opinion of a treating source than to the opinions of other medical professionals. 20 C.F.R. § 404.1527(d)(2). Furthermore, a treating source's opinion is to be given "controlling weight" if it "[(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence" in the record. Id. If the treating source's opinion does not satisfy both of these conditions, the ALJ may choose not to give it controlling weight. In such a case, however, the regulations require the ALJ to consider several additional factors: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." Clark v. Comm'r of Social Sec., 143 F.3d 115, 118 (2d Cir. 1998) (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)).

When the ALJ believes that the medical evidence supporting a physician's opinion is inadequate or inconsistent, he bears an affirmative duty to seek additional information sua sponte. Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998). This duty exists even when the claimant is represented by counsel. Id. See also Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996).

Finally, the ALJ must always provide "good reasons" for the weight ascribed to the treating source's opinion. 20 C.F.R. § 404.1527(d)(2); See also Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided

14

'good reasons' for the weight given to a treating physician[']s opinion . . . .").

B. Application

The ALJ offered only a brief explanation, quoted here in its entirety, for his decision not to afford controlling—or even significant—weight to Dr. Fasolya's opinion regarding plaintiff's physical limitations:

> I did consider Dr. Fasolya's opinion in September 2005 that the claimant can only lift and carry objects weighing less than 10 pounds and sit, stand and walk for less two hours [sic], each, in an eight hour workday (Exhibit 6F). However, Dr. Fasolya's opinion is not supported by any objective medical findings and is inconsistent with the other physicians' opinion [sic] in Exhibits 4F [the opinion of Disability Analyst Posner] and 5F [the opinion of Dr. Kape] who noted that the claimant can lift and carry objects weighing 10 pounds frequently and 20 pounds occasionally, sit for at least six hours in an eight hour workday and stand/walk up to six hours in an eight hour workday despite her impairments and symptoms. Therefore, I do not give Dr. Fasolya's opinion significant weight.

Tr. 16. This cursory dismissal of the treating physician's opinion fails to satisfy the minimal requirements of the law, and deprives plaintiff of the fair disposition of her claim to which she is legally entitled. The ALJ erred in two specific ways. First, he failed to acknowledge the medical evidence supporting Dr. Fasolya's opinion regarding plaintiff's physical limitations.[4] Second, he failed to provide good reasons for his assessment of Dr. Fasolya's opinion.

---

[4]The ALJ also decided not to accord "significant weight" to Dr. Fasolya's opinion that plaintiff suffered from depression and anxiety, and therefore was incapable of performing even "low stress jobs." Tr. 16. The ALJ discounted this opinion because of a lack of medical evidence showing that plaintiff had suffered from or been treated for psychiatric problems. Indeed, the record discloses little, if any, evidence regarding plaintiff's mental health. Because the ALJ's treatment of Dr. Fasolya's opinion regarding plaintiff's physical condition is sufficient to justify remanding this case, the Court will not consider in detail Dr. Fasolya's opinion regarding plaintiff's mental health. However, on remand, the ALJ should re-evaluate this issue, seeking out additional information in accordance with his affirmative duty to develop the record. See Schaal, 134 F.3d at 505.

### 1. Objective Medical Evidence Supporting Dr. Fasolya's Opinion

The ALJ found that Dr. Fasolya's opinion was "not supported by any objective medical findings . . . ." Tr. 16. The record says otherwise. Most significantly, the record includes reports of two CT scans, Tr. 122, 124; and one MRI, Tr. 148, which show abnormalities in plaintiff's lower back. As discussed above, the most recent test shows a "herniated nucleus pulposus in contact with the thecal sac and facet joint hypertrophy encroaching upon the left and right lateral neural foraminal at L5-S1," potentially a very painful condition. Tr. 148. Moreover, these data clearly constitute "objective medical evidence." See 20 C.F.R. 404 Subpart P, appendix 1, 1.00(C) ("Diagnosis and evaluation of musculoskeletal impairments should be supported, as applicable, by . . . medically acceptable imaging . . . [which] includes . . . computerized axial tomography (CAT scan) or magnetic resonance imaging (MRI) . . . ."). In addition, over the course of at least nine examinations, Dr. Fasolya gathered substantial clinical data. Tr. 89-96, 115. For example, several times she found decreased range of motion in plaintiff's hips, Tr. 89, 91-96; and knees, Tr. 94-95. Dr. Fasolya also performed a straight leg raising test, Tr. 92, a well-established clinical technique that "tends objectively to demonstrate a serious back condition." Miles v. Harris, 645 F.2d 122, 125 (2d Cir. 1981) (citing 1 Lawyers' Medical Cyclopedia §§ 7.10-.11 (1966 & Supp. 1968)). The straight leg raising test was positive. Tr. 92. These findings constitute objective medical evidence under 20 C.F.R. § 404.1529(c)(2), which provides that "[o]bjective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion . . . . ." Contrary to the ALJ's finding, then, the record *did* contain objective medical evidence supporting Dr. Fasolya's opinion. Both the ALJ's statement to the contrary, and his

decision not to accord Dr. Fasolya's opinion significant weight on this basis, were error.[5]

2.  **Good Reasons**

As explained above, where an ALJ decides not to give controlling weight to the opinion of a claimant's treating physician, he must consider a set of factors expressly enumerated in the regulations. See 20 C.F.R. § 404.1527(d). Further, regardless of the weight he decides to assign the treating physician's opinion, the ALJ must offer "good reasons" for his decision. Id. In declining to grant controlling or even significant weight to the opinion of Dr. Fasolya regarding plaintiff's residual functional capacity, the ALJ offered only the brief rationale quoted above. His failure to provide a more thorough explanation of the basis for his decision was error. See Schaal, 134 F.3d at 505 (holding that "the Commissioner's failure to provide 'good reasons' for apparently affording no weight to the opinion of the plaintiff's treating physician constituted legal error.").

The "good reasons" requirement serves two important purposes. First, it facilitates judicial review of administrative decisions. See Halloran, 362 F.3d at 33 (stating that "good reasons" requirement "greatly assists . . . review of the Commissioner's decision."). Although the ALJ's decision states that he "considered opinion evidence in accordance with the requirements of 20 C.F.R § 404.1527," Tr. 15, because he did not enumerate good reasons for his decision, the Court is unable to conclude from the record before it that he properly applied the

---

[5]Even assuming the ALJ had identified evidentiary gaps undermining Dr. Fasolya's opinion, his summary dismissal of her opinion without further inquiry is in any event erroneous. Under such circumstances, the ALJ bears an affirmative duty to develop the record. Schaal, 134 F.3d at 505.

17

substance of that regulation. The Second Circuit has declared that the Commissioner's decision cannot be affirmed under such circumstances: "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Schaal, 134 F.3d at 504 (quoting Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).

Second, the "good reasons" requirement "exists, in part, to let claimants understand the disposition of their cases, even—and perhaps especially—when those dispositions are unfavorable." Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999). In this case, with very little explanation, the ALJ entirely discounted the opinion of plaintiff's physician, who had treated her for over two years, and whose opinion was supported by substantial record evidence. Moreover, to the extent the ALJ did provide reasons for his decision, they evince several obvious flaws. The ALJ erroneously referred to Elin Posner's opinion as that of a physician. See Tr. 16 (referring to "Exhibit[] 4F"). He also failed to address internal inconsistencies in Posner's RFC assessment. In support of her conclusions as to plaintiff's exertional limitations, Posner cited "limited range of motion of the L-S spine . . . and limited ROM of the knee." Tr. 133. Three pages later, however, in explaining why Dr. Fasolya's conclusions "are not supported by the evidence in the file," Posner cited Dr. Kape's assertion that "there is no restriction in ROM." Tr. 136. Another troubling aspect of the ALJ's decision is his reliance upon plaintiff's account of her daily activities in 2003, despite its inconsistency with the account she gave at her hearing, nearly two years later. The ALJ cited plaintiff's indication in 2003 that she could "prepare meals and shop for groceries," Tr. 16 (referring to Tr. 75, 77) as evidence that she was "capable of

working despite her impairments and symptoms." Id. At the hearing, however, plaintiff testified that she did no shopping, cooking, or cleaning. Tr. 159. Such a decrease in function might reasonably be expected of someone with a chronic back disorder, and, indeed, is consistent with the Disability Report plaintiff completed in connection with her appeal, in which she indicated that her condition had "worsened," and that she was "doing less and less activities." Tr. 38. Yet the ALJ failed to address this aspect of plaintiff's testimony in his decision. Finally, the ALJ stated that plaintiff testified that "medications, physical therapy and injections have helped alleviate her pain." Tr. 16. In fact, plaintiff testified that medication helped "[s]ometimes a little bit"; epidural injections helped "[s]ometimes, not all the time"; and physical therapy helped "[a] little bit." Tr. 157. By seizing upon plaintiff's admission that her treatments helped alleviate her pain to some degree, while ignoring the qualifications she offered, the ALJ mischaracterized the substance of plaintiff's testimony.

Ultimately, the ALJ's recitation of two conclusory reasons for the weight he afforded the opinion of plaintiff's treating physician, and his apparently incautious and at times selective consideration of the evidence in the record, deprives plaintiff of the transparent and rational disposition of her case to which she is legally entitled, and therefore constitutes error sufficient to require a remand.


## CONCLUSION

As explained above, the Court concludes that the ALJ erred in failing to acknowledge the medical evidence supporting the opinion of plaintiff's treating physician and in failing to provide good reasons for the weight he accorded that opinion. The Court therefore remands plaintiff's

case for further proceedings consistent with this opinion. On remand, the ALJ should consider Dr. Fasolya's opinion in light of the objective medical evidence discussed above, and in accordance with 20 C.F.R. §§ 404.1527(d)(2). He should attempt to reconcile the inconsistent clinical findings and conclusions of Drs. Fasolya, De Leon, and Kape. He should address all aspects of plaintiff's testimony. Finally, the ALJ must seek out evidence bearing on plaintiff's non-exertional limitations, either confirming or rebutting Dr. Fasolya's opinion regarding plaintiff's mental health.

SO ORDERED.

Dated: Brooklyn, New York
July _11_, 2007

s/ Judge Raymond J. Dearie
_____
RAYMOND J. DEARIE
United States District Judge